AO 91 (Rev. 11/11) Criminal Complaint — AUSA Michael J. Kelly (312) 697-4037

**INTAKE SEP 2 7 2019**

**FILED SEP 2 7 2019**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

AMADOU M'BAYE

CASE NUMBER: 

Magistrate Judge Sidney I. Schenkier
United States District Court
**19 CR 759**
MAGISTRATE JUDGE SCHENKIER

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about September 11, 2019, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 111(a) | forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with persons designated in Title 18, United States Code, Section 1114, namely, employees of U.S. Immigration & Customs Enforcement, who were engaged in the performance of their official duties. |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_____
JAMES BUCK
Senior Special Agent, Immigration & Customs Enforcement (ICE)

Sworn to before me and signed in my presence.

Date: September 27, 2019

_____
*Judge's signature*

City and state: Chicago, Illinois

SIDNEY I. SCHENKIER, U.S. Magistrate Judge
*Printed name and Title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, JAMES BUCK, being duly sworn, state as follows:

1. I am a Senior Special Agent with the Office of Professional Responsibility, an internal affairs division within Immigration & Customs Enforcement ("ICE"), and have been so employed since December 2018. Prior to my assignment with the Office of Professional Responsibility, I was a Special Agent with ICE, Homeland Security Investigations, and was so employed since 2004. My duties include the investigation of assaults on federal officers by those individuals in ICE custody, the impersonation of ICE officers by civilians, and allegations of misconduct involving ICE employees.

2. This affidavit is submitted in support of a criminal complaint alleging that AMADOU M'BAYE has violated Title 18, United States Code, Section 111(a). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging M'BAYE with assaulting, resisting, and impeding a federal officer or employee, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, video surveillance, conversations I have had

with others who have knowledge of the events and circumstances described below, and my training and experience as an ICE Senior Special Agent.

I.       FACTS ESTABLISHING PROBABLE CAUSE

    4.     M'BAYE has no legal right to remain in this country and became subject to an order of removal. Deportation officers attempted to execute that removal order by escorting M'BAYE through security at O'Hare International Airport in Chicago and onto a plane with a final destination of M'BAYE's native country, Mauritania. While at O'Hare's security checkpoint, M'BAYE assaulted the deportation officers who were escorting him, in violation of Title 18, United States Code, Section 111(a).

### *M'BAYE Immigrated to the United States Illegally*

    5.     M'BAYE is a native and citizen of Mauritania.

    6.     On or about February 1, 1994, M'BAYE entered the United States at or near Miami, Florida, without submitting himself to inspection by U.S. Immigration authorities.

    7.     On or about December 26, 1996, M'BAYE filed an application for Asylum and Withholding of Deportation, Form I-589, with the United States Citizenship and Immigration Services ("USCIS") Asylum Office.

    8.     On or about December 5, 1997, the USCIS Asylum Office denied M'BAYE's application for Asylum and Withholding of Deportation. On the same day, the USCIS Asylum Office issued M'BAYE a Notice to Appear, Form I-862, charging M'BAYE with violating Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, as an alien present in the United States without being admitted and without

submitting to inspection by U.S. Immigration authorities. M'BAYE was ordered to appear for a hearing on or about August 6, 1998.

9. On or about December 23, 1998, M'BAYE filed a second, amended application for Asylum and Withholding of Deportation.

10. On or about November 16, 2001, an immigration judge denied M'BAYE's application for Asylum and Withholding of Deportation, and ordered M'BAYE removed from the United States to Mauritania.

11. M'BAYE appealed the order of removal to the Board of Immigration Appeals on or about December 14, 2001. The Board of Immigration Appeals dismissed the appeal on or about July 31, 2003.

### *M'BAYE Remained in the United States Due to the Inability to Obtain a Travel Document from Mauritania*

12. Following the order of removal and dismissal of appeal, M'BAYE was not removed to Mauritania due to the inability to obtain a travel document for M'BAYE from the Mauritanian government.

13. Instead, ICE Enforcement and Removal Operations ("ICE ERO") released M'BAYE on about April 13, 2006, and again on or about June 4, 2010, after encounters with law enforcement, on an Order of Supervision, Form I-220B, due to the inability to secure a travel document from Mauritania.

### *Immigration Authorities Encountered M'BAYE in May 2018 After he was Arrested Again*

14. On or about May 8, 2018, ICE ERO encountered M'BAYE at the Campbell County Jail in Newport, Kentucky, after M'BAYE was arrested for failure

3

to appear on a citation.[1] ICE ERO issued a detainer. On or about October 25, 2018, M'BAYE was transferred to ICE custody, pursuant to the ICE ERO detainer.

### *M'BAYE was Scheduled to be Removed from the United States*

15. On or about August 21, 2019, the Embassy of Mauritania issued a travel document allowing M'BAYE to enter Mauritania. The travel document is valid for 120 days from the date that it is issued.

16. On or about August 30, 2019, ICE ERO Chicago scheduled M'BAYE to be removed from the United States to Mauritania. ICE ERO Chicago made arrangements for M'BAYE to be escorted to Mauritania by three Deportation Officers: DO LaTasha Harper, DO Luis Gonzalez, and DO Jason Lang.

17. On or about September 3, 2019, ICE ERO Officers presented M'BAYE with the order dated November 16, 2001, ordering M'BAYE removed from the United States to Mauritania. ICE ERO Officers also presented M'BAYE with his travel document to Mauritania and an estimated timeframe for when the removal would take place.

18. On or about September 11, 2019, M'BAYE was served with a Warrant of Removal/Deportation, Form I-205, and a Warning to Alien Ordered Removed or Deported, Form I-294 by ICE ERO Officers.

### *M'BAYE Resisted Deportation and Assaulted Federal Officers*

19. On or about September 11, 2019, at approximately 11:45 a.m., Deportation Officers Harper, Gonzalez, and Lang arrived at O'Hare International

---

[1] The citation was for attempted credit card fraud, which allegedly occurred in or about 2015. The citation was ultimately dismissed.

4

Airport with M'BAYE to board a flight with M'BAYE to Nouakchott, Mauritania. The three Deportation Officers and M'BAYE arrived at the security checkpoint at Terminal 3 at approximately 12:20 p.m.

20. According to Deportation Officers Harper and Lang, Deportation Officer Gonzalez went through the security checkpoint to the secure side, and was to receive M'BAYE after he went through the checkpoint. Deportation Officers Harper and Lang remained on the other side with M'BAYE. According to Deportation Officers Harper and Lang, after Deportation Officers Lang and Harper placed M'BAYE's property on the conveyor belt for the x-ray scanner, M'BAYE stated that he was not going to go through the security checkpoint. According to Deportation Officers Harper and Lang, at that time, Deportation Officer Harper instructed M'BAYE not to cause a scene and to walk through the checkpoint.

21. According to Deportation Officers Harper and Lang, M'BAYE became agitated and began raising his voice. According to Deportation Officers Harper and Lang, Deportation Officers Lang and Harper then attempted to escort M'BAYE through the checkpoint, at which point he physically resisted Deportation Officers Harper and Lang's efforts to escort him through the checkpoint. Specifically, according to Deportation Officers Harper and Lang, M'BAYE violently grabbed Deportation Officer Harper's shirt collar, scratching and breaking the skin on Deportation Officer Harper's neck. M'BAYE then attempted to head-butt Deportation Officer Harper while holding onto her shirt collar. Deportation Officer Harper was able to subsequently gain control of M'BAYE's left arm, placing it in handcuffs, while Deportation Officer Lang secured his right arm and placed it behind M'BAYE's back.

5

Deportation Officer Gonzalez returned to the other side of the security checkpoint, grabbed M'BAYE's shirt and arms and assisted Deportation Officers Land and Harper in placing M'BAYE into a kneeling position so that Deportation Officers Lang and Harper could cuff M'BAYE's hands behind his back.

22. The incident was captured by security cameras in the checkpoint area. I have watched the security footage and M'BAYE can be seen grabbing at Deportation Officer Harper's upper chest and neck area with his left hand, attempting to head-butt Deportation Officer Harper, resisting Deportation Officer Lang with his right hand, and then being secured by Deportation Officers Harper, Lang, and Gonzalez after being brought to a kneeling position.

23. Deportation Officers Harper, Lang, and Gonzalez brought M'BAYE to the gate after securing M'BAYE. However, after reaching the gate, the deportation officers were informed by an Acting Supervisory Detention and Deportation Officer to return to the ICE ERO Chicago Field Office with M'BAYE.

24. M'BAYE and Deportation Officers Lang and Gonzalez declined medical treatment. Deportation Officer Harper drove herself to an urgent care facility for evaluation of the abrasions on her neck area and was released that evening.

## Conclusion

25. Based on the foregoing, I respectfully submit that there is probable cause to believe that on September 11, 2019, in Chicago, M'BAYE forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with persons designated in Title 18, United States Code, Section 1114, namely, employees of U.S. Immigration & Customs Enforcement, who were engaged in the performance of their official duties, in violation of Title 18, United States Code, Section 111(a).

FURTHER AFFIANT SAYETH NOT.

JAMES BUCK
Senior Special Agent, Immigration & Customs Enforcement

SUBSCRIBED AND SWORN to before me on September 27, 2019.

SIDNEY I. SCHENKIER
United States Magistrate Judge

7